UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ROBIN MARK REITZ

                   Plaintiff,

    v.

MAYOR SAM ADAMS, GOVERNOR
KITZHABER OF OREGON, PORTLAND
POLICE DEPARTMENT, STATE OF
OREGON, AND OREGON DEPARTMENT
OF TRANSPORTATION,

                   Defendants.

No. 3:13-cv-02025-AC

FINDINGS & RECOMMENDATION

ACOSTA, Magistrate Judge:

      Robin M. Reitz ("Reitz"), proceeding *pro se* and *in forma pauperis,* filed this lawsuit against

former Portland Mayor Sam Adams ("Adams"), the Portland Police Bureau ("PPB")[1] (the "City

---

[1] Reitz's complaint names as a defendant "the City of Portland Police Dept." However, the police force for the city of Portland is, in fact, the Portland Police Bureau. The court will use the official nomenclature of Portland Police Bureau, or PPB.

FINDINGS AND RECOMMENDATION - 1                               [RMD]

Defendants"), former Oregon Governor John Kitzhaber ("Kitzhaber"), the State of Oregon ("State"), and the Oregon Department of Transportation ("ODOT") (the "State Defendants") (collectively "Defendants") to recover for injuries Reitz sustained after being attacked on state property located in Portland, Oregon. Now at issue are five motions: (1) Reitz's Motion for Default filed June 27, 2014 (the "First Motion for Default") (Dkt. No. 38); (2) the State Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. No. 43); (3) the City Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. No. 44); (4) Reitz's Motion for Default Judgment filed July 24, 2014 (the "Second Motion for Default") (Dkt. No. 53); and (5) Reitz's Motion for Extension of Time (Dkt. No. 56.) The court concludes Reitz's claims against the named defendants should be dismissed with prejudice.

*Factual Background*

Reitz's Second Amended Complaint ("Complaint") is hand-written and largely incoherent. The allegations contained therein cover a broad range of topics, but Reitz's claims for relief arise mainly from an incident in 2011 where Reitz was attacked by two men on property owned by the State. The Police arrived and, despite a witness to support Reitz's version of events, arrested Reitz for assault. Reitz's Complaint also makes allegations that he was drugged, harassed, abused in jail, and suffered an "intentional drug induced heart attack." (Dkt. No. 24 at 1-2.) However, Reitz does not specify who drugged, harassed, and abused him.

*Procedural Background*

Reitz filed his original complaint November 14, 2014. The court attempted on four occasions to appoint pro bono counsel for Mr. Reitz, but none of the five attorneys appointed to represent Reitz were in a position to accept the court's appointment and serve as Reitz's counsel. (Dkt. Nos. 12, 17,

FINDINGS AND RECOMMENDATION - 2                                              [RMD]

22, 25, 29.) Therefore, throughout the pendency of this case, Reitz has proceeded *pro se*. On March 11, 2014, without leave of the court, Reitz filed his First Amended Complaint. Defendants were never served with the First Amended Complaint. Only thirteen days later and without leave of the court, Reitz filed a Second Amended Complaint, again without leave of the court.

On May 9, 2014, the court held an in-person scheduling conference pursuant to Federal Rule of Civil Procedure ("Rule") 16. As of the date of that conference, Reitz had not served the Defendants with the Complaint. The court advised Reitz that he was required to serve the Defendants with a summons and complaint, and ordered him to do so by June 9, 2014. (Dkt. No. 34.) The court's May 9, 2014 ruling served as retroactive leave to file his Second Amended Complaint. (Dkt. No. 73.) Through the U.S. Marshals, Reitz served the Defendants between June 13, 2014, and June 26, 2014. (Dkt. Nos. 36, 37, 40, and 41.) Only days after Defendants were served with process, Reitz filed his First Motion for Default Judgment. (Dkt. No. 38.) Defendants opposed Reitz's Motion for Default Judgment and filed motions to dismiss Reitz's claims for failure to state a claim. (Dkt. Nos. 43-44.) Thereafter, Reitz filed his Second Motion for Default and a Motion for Extension of Time. (Dkt. Nos. 53, 56.)

Reitz filed a second case in this district, which was assigned to District Judge Garr M. King ("Judge King"). *Reitz v. City of Portland Police Dep't*, No. 3:13-CV-01483-KI. Defendants in that case moved to dismiss for lack of subject-matter jurisdiction and, on August 26, 2014, Judge King issued an Opinion and Order dismissing with prejudice all three of Reitz's claims for failure to state a claim. *Id.* at Dkt. No. 59. Judge King *sua sponte* held that Defendants did not produce sufficient evidence to demonstrate lack of subject-matter jurisdiction. *Id.* at *2-3. However, Judge King observed that two of Reitz's claims were indecipherable and wholly lacked legal foundation, and the

FINDINGS AND RECOMMENDATION - 3                                    [RMD]

remaining claim was insufficiently pleaded. *Id.* at *3.  On that basis, Judge King dismissed Reitz's claim with prejudice and entered a judgement in the defendants' favor. *Id.* at *5.

*Legal Standards*

## I.  Default Judgment

Federal Rule of Civil Procedure ("Rule") 12 provides that a defendant must answer a complaint "within 21 days after being served with the summons and complaint," or, if the defendant waives service of process, "within 60 days after the request for a waiver was sent . . . ." FED. R. CIV. P. 12(a)(1)(A).  If a defendant fails to file an answer within the time specified in Rule 12, "and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).  Upon the entry of default, the court treats as true all well-pleaded allegations made in the plaintiff's complaint against the defaulted defendant. *Geddes v. United Fin. Group.*, 559 F.2d 557, 560 (9th Cir. 1977).

## II.  Motion to Dismiss Under Rule 12(b)(6)

Rule 8 requires that complaints in federal court consist of "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Pleadings need not contain detailed factual allegations, but "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, a claim "may proceed even if it strikes a savvy judge that actual proof of [necessary] facts is improbable," and the plaintiff is unlikely to succeed on the merits. *Id.* at 556.

On a motion for failure to state a claim, the court is limited in the evidence it may consider. *Am. Family Ass'n, Inc. v. City & County of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002).  The court may consider the pleadings themselves, exhibits that are physically attached to the complaint, and

FINDINGS AND RECOMMENDATION - 4                                                    [RMD]

matters of which the court may take judicial notice. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). For all other factual matters, the court must assume all allegations in the complaint are true and draw all "reasonable inferences in favor of the nonmoving party." *Holden v. Hagopian,* 978 F.2d 1115, 1118 (9th Cir. 1992).

In cases involving a *pro se* plaintiff, the court construes the pleadings liberally and affords the plaintiff the benefit of any doubt. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In other words, courts hold *pro se* pleadings to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, despite the court's duty to treat *pro se* complaints liberally, the court may not supply essential elements of a claim that were not pleaded. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

III.  Motion for Extension of Time

"For good cause, the court may extend the time prescribed by the [Federal Rules of Civil Procedure] or by its order to perform any act, or may permit an act to be done after that time expires" with the exception of certain deadlines related to the appeals process. FED. R. CIV. P. 26(b). Local Rule 16-3 dictates that a party seeking an extension of a court-imposed deadline must file a motion which: (1) shows good cause why the deadline should be modified; (2) shows the "effective prior use of time[;] (3) recommends a new deadline; and (4) shows "the impact of the proposed extension upon other existing deadlines, settings, or schedules." LR 16-3(a).

*Discussion*

The court must review and resolve five motions: (1) Reitz's First Motion for Default Judgment; (2) City Defendants' Motion to Dismiss; (3) State Defendants' Motion to Dismiss; (4) Reitz's Second Motion for Default; and (5) Reitz's Motion for Extension of Time. First, the court

will first review Reitz's First Motion for Default. Second, the court will analyze Reitz's Motion for

Extension of time, as the outcome of that motion affects the court's analysis on Defendants' motions

to dismiss. Third, the court will discuss Defendants' Motions to dismiss. Fourth, if necessary, the

court will address Reitz's Second Motion for Default.

I.  Reitz's First Motion for Default

On June 27, 2014, Reitz filed his First Motion for Default. In it, he contends that "the 21

time limit ha[s] expired" and he has received "no mail from the defendants." (Dkt. No. 38 at 1.) He

did not accompany his motion for default with a declaration or other evidence to support his motion.

In Oregon, personal service is effective immediately, but service by mail is effective "on the

day the defendant, or other person authorized by appointment or law, signs a receipt for the mailing,

or three days after the mailing if mailed to an address within the state. OR. R. CIV. P. 7D(2)(d)(ii).

If within twenty-one days of the effective date of service the defendant has not filed an answer,

moved to dismiss under Rule 12(b), or otherwise appeared before the court, the defendant may move

for default judgment. FED. R. CIV. P. 55(a).

A review of the record shows Reitz prematurely filed his First Motion for Default. Kitzhaber

and ODOT were served by certified mail on June 13, 2014. On June 20, 2014, the U.S. Marshals

served Adams by leaving a copy of the summons and complaint with a receptionist at the Office of

Risk Management. (Dkt. No 40 at 1.) Reitz, through the U.S. Marshals, served the PPB on June 26,

2014 by leaving the summons and complaint with Mike Hefley, the PPB's agent designated by law

to accept service of process. (Dkt. No. 41 at 3-4.)

Even assuming, without deciding, that the Defendants were properly served, Reitz's First

Motion for Default is premature. Because the State Defendants were served on June 13, 2014, and

FINDINGS AND RECOMMENDATION - 6                                    [RMD]

were required to file an answer or a Rule 12(b) motion to dismiss by July 4, 2014. Adams and PPB were required to file a responsive pleading by July 11 and July 17, respectively. When Reitz filed his First Motion for Default on June 27, 2014, the twenty-one day "answering period" had not run for any of the Defendants. Because Reitz's First Motion for Default was premature, it should be denied.

## II.  Motion for Extension of Time

On August 15, 2014, more than two months after the court-imposed service deadline had passed, Reitz filed a "Motion for Extension of Time." In it, he asks for a retroactive extension of the service deadline "because of [his] medical condition and the intentional conspiracy against" him. (Dkt. No. 56 at 1.) The remainder of his hand-written motion discusses a variety of alleged circumstances which have befallen Reitz, including the theft of his property and Reitz's allegation that he is being drugged. (Dkt. No. 56 at 2-4.) Attached to Reitz's motion are twenty-four pages of documents, including medical records and newspaper articles. Most of Reitz's "evidence" has no clear connection either to his motion for extension or to the facts of this case. State Defendants opposed Reitz's Motion for extension of Time and argued the court should deny Reitz's motion as untimely and lacking legal or factual foundation.

The Rules of Civil Procedure provide that the court may extend deadlines set by the Rules or by the court for "good cause." FED. R. CIV. P. 6(b). A party seeking an extension must do so by motion which demonstrates good cause and effective prior use of time. LR 16-3(a).

The court concludes Reitz has not met his burden to show good cause for an extension. First, Reitz's filed his motion for an extension more than two months after the court-imposed service deadline. Second, Reitz did not establish good cause for an extension. In his motion, Reitz makes

cursory reference to a "medical condition," but he does not explain with specificity how his medical condition caused or contributed to his delay serving Defendants or why he waited more than two months to move for an extension. Moreover, Reitz's evidence is largely irrelevant and does not support his contention that a medical condition impeded his ability to serve Defendants. Third, Reitz's motion does not show effective prior use of time, does not propose a new deadline, and does not explain how the change in deadline affects the extension on the current court schedule, all as required by LR 16-3. For those reasons, the court should deny Reitz's Motion for Extension of Time, and declare the Complaint untimely.

III. Motions to Dismiss

On November 11, 2014, City Defendants and State Defendants each filed a motion to dismiss. Reitz does not address Defendants' arguments in his Response. Instead, he restates his allegations against the Defendants and recounts the allegations at issue in this case. Both City Defendants and State Defendants move to dismiss for lack of subject-matter jurisdiction and because they were not timely served. The court will first address those arguments common to both motions. Thereafter, the court will address the arguments unique to each defendant.

A. Subject Matter Jurisdiction

The Defendants argue the court should dismiss Reitz's claims with prejudice for lack of subject matter jurisdiction. In his First Amended Complaint, Reitz claims diversity of citizenship as the sole basis for this court's jurisdiction. However, some of Reitz's allegations may give rise to federal question jurisdiction, as they could be construed as an attempt to plead a claim under 42 U.S.C. § 1983. Thus, the court will undertake to determine whether it may exercise jurisdiction under either § 1331 or § 1332.

FINDINGS AND RECOMMENDATION - 8                                    [RMD]

"Federal courts are courts of limited jurisdiction" and may hear only those cases they are authorized to hear by federal statute or the Constitution. *Kokonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The two primary bases for federal subject matter jurisdiction are federal questions and diversity of citizenship. Accordingly, this court may hear those claims "arising under the Constitution, laws, or treaties of the United States" and claims among citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a).

Reitz contends in his Complaint that this court has diversity jurisdiction over this case. To exercise diversity jurisdiction, the parties must be citizens of different states and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). Courts determine citizenship according to where the parities are "domiciled," or where they reside with an intent to remain. *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986). Here, Reitz's mailing address is a P.O. box in the State of Washington, and the Defendants are all citizens of Oregon. Although there is some evidence Reitz lived in Portland during times relevant to this case, the court will give Reitz the benefit of the doubt that he was a citizen of Washington at the time he filed this case.

Defendants argue Reitz fails to plead facts sufficient to demonstrate § 1332's amount-in-controversy requirement is met. However, the court may dismiss a claim for failing to meet the amount in controversy only if, "to a legal certainty" the claim is not worth more than $75,000. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). The court is skeptical that more than $75,000 is at stake in this case, but Defendants have not demonstrated, and the court cannot conclude "to a legal certainty," that the amount-in-controversy requirement is not met.

Even if this court lacked diversity jurisdiction, Reitz's complaint contains allegations which could form the basis of federal-questions jurisdiction. In his third claim for relief, Reitz alleges,

FINDINGS AND RECOMMENDATION - 9                                    [RMD]

"[w]hile in jail I was [b]eing abused." This could be construed as an attempt to plead a claim under 42 U.S.C. § 1983. Therefore, the court may exercise both diversity jurisdiction and federal question jurisdiction over this case, and should not dismiss Reitz's claims for lack of subject matter jurisdiction.

### B. Timeliness

Defendants move to dismiss Reitz's Claims because they were not timely served. Reitz did not respond to Defendants' timeliness argument in his Response, but moved for a retroactive extension of time in which to serve Defendants. The court has already recommended denial of Reitz's Motion for Extension of Time, and on that basis, should dismiss Reitz's Complaint as untimely.

Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Moreover, as the court discussed *supra*, the court may extend deadlines for good cause. FED. R. CIV. P. 6.

Reitz failed to meet the service deadlines imposed by this court. At a May 2014 status conference, the court explained to Reitz that he was required to serve Defendants with a summons and complaint, provided Reitz with information about how to serve Defendants, and set a service deadline of June 9, 2014. (Dkt. No. 34.) Although Reitz delivered the pertinent documents to the U.S. Marshal's office for service on June 6, 2014, the Marshals did not serve State Defendants until June 13, 2014, did not serve Adams until June 20, 2014, and did not serve PPB until June 25, 2014.

FINDINGS AND RECOMMENDATION - 10                                    [RMD]

The court excused Reitz's first failure to serve Defendants due to his status as a *pro se* plaintiff. The court also gave Reitz instructions on how to serve Defendants, and it set a new deadline for service. After that conference, Reitz took no action until three days before the service deadline lapsed, when he delivered the summonses and complaints to the U.S. Marshals. Reitz has provided no evidence to support his contention that a medical condition prevented him from timely serving defendants. The court should dismiss Reitz's First Amended Complaint without prejudice for failure to meet court-imposed service deadlines. However, it does not follow from this conclusion that Reitz's claims are foreclosed as a matter of law. Therefore, the court will now review the substance of Reitz's Complaint to determine whether Reitz's claims should be dismissed with or without prejudice.

### C. State Defendants' Motion to Dismiss

State Defendants filed a motion to dismiss because: (1) the State Defendants are immune from suit under the Eleventh Amendment to the Constitution; (2) Reitz failed to give adequate notice as required by the Oregon Tort Claims Act; and (3) Reitz's Complaint fails to state a claim upon which relief may be granted. Reitz did not address any of State Defendants' arguments in his Response.

#### 1. Eleventh Amendment Sovereign Immunity

State Defendants argue that they should be dismissed with prejudice as defendants because they are insulated from Reitz's federal claims by the Eleventh Amendment to the U.S. Constitution. The court concludes Reitz's federal claims fail due to the State Defendants' Eleventh Amendment sovereign immunity.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign state.

The text of the Eleventh Amendment appears to divest federal courts only of diversity jurisdiction for cases brought against a state, but the Supreme Court has interpreted the Eleventh Amendment to mean that a state, as "a sovereignty in our federal system . . . [is] not amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996), (quoting *Hans v. La.*, 134 U.S. 1, 13 (1890)). Thus, "states may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

When a state agency is named as a defendant to a suit, "the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit." *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th Cir. 1991). Similarly, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, neither of the State Defendants are amenable to Reitz's claims unless their immunity was waived or abrogated by Congress.

To the extent Reitz intended to plead a claim under § 1983, State Defendants are immune from suit. The Ninth Circuit has repeatedly held that § 1983 does not unequivocally abrogate a state's sovereign immunity, and may not be used to recover damages against a state, a state agency, or government officers acting within their official capacities. *Brown v. Ore. Dep't of Corr.*, 751 F.3d 983, 988-99 (9th Cir. 2014); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (Eleventh Amendment immunity applies to state agencies); *Flint v. Dennison*, 448 F.3d 816, 824-25 (9th Cir.

FINDINGS AND RECOMMENDATION - 12                                          [RMD]

2007) (Eleventh Amendment bars claims against state officials in their official capacity because the damages award would be satisfied with funds from the state treasury). The record contains no evidence that ODOT, Kitzhaber, or the State of Oregon waived its immunity from suit under § 1983. Therefore, to the extent Reitz attempts to state a claim arising under that statute, Reitz's claim is futile, and should be dismissed with prejudice.

      2. Oregon Tort Claims Act

      State Defendants next contend that, to the extent the OTCA acts as a waiver of Eleventh Amendment immunity for certain claims, Reitz has not given adequate notice of his claims under the OTCA. The OTCA requires that individuals seeking to bring suit against the State of Oregon, a state agency, or a state employee provide the state with notice of that claim "within 180 days of the alleged loss or injury." OR. REV. STAT. § 30.275(2)(b). "Failure to give timely notice of a claim is fatal to a plaintiff's tort claim against a public body." *Denucci v. Henningsen*, 248 Or. App. 59, 66 (2012). Further, "[t]he pleading and proof of notice sufficient to satisfy the requirements of ORS 30.275 is a mandatory requirement and a condition precedent to recovery under the" OTCA. *Urban Renewal Agency of City of Coos Bay v. Lackey*, 275 Or. 35, 40 (1976).

      Reitz does not allege in the Complaint that he gave State Defendants tort-claim notice under the OTCA. The only evidence that he may have given proper notice is an exhibit to his original Complaint. (Dkt. No. 1 at 6.) That document is a screen shot of an email exchange (the "Email") between Reitz and Rebecca L. Thoreson ("Thoreson"), a "citizens' representative" for ODOT. In the Email, Reitz briefly described the November 2011 attack which gave rise to his suit. Reitz then explained that he plans on filing suit to recover for his injuries if ODOT does not provide a settlement agreement "within a week." (Dkt. No. 1 at 6.) The Email is not dated, but the previous

communication to which the Email replies is dated October 11, 2013. (Dkt. No. 1 at 6.) Thus, if Reitz sent the email to Thoreson, he did so on or after October 11, 2013.

Under the OTCA, Reitz was required to provide a tort-claim notice within 180 days of his injury. Assuming as true Reitz's allegation that his attack occurred sometime in November 2011, his tort claim notice was due by May 28, 2012, at the very latest. If Reitz sent the Email to Thoreson, it was on or after October 11, 2013. Based on the record, the court concludes Reitz gave untimely tort-claim notice or no notice at all. Because Reitz failed to comply with the OTCA, his claims are futile and should be dismissed with prejudice to the extent they are brought against the State of Oregon, its agencies, employees, and officers.

### D. City Defendants' Motion to Dismiss

City Defendants filed a Motion to Dismiss claiming: (1) The PPB cannot be sued as an entity separate from the City of Portland; (2) Adams was improperly served; and (3) Reitz's Complaint fails to adequately state a claim against either City Defendant. Reitz did not respond to any of City Defendants' arguments in his Response. After reviewing the City Defendants' arguments, the court concludes all of Reitz's claims against City Defendants are futile and should be dismissed with prejudice.

### 1. Portland Police Bureau as Defendant

Reitz did not name the City of Portland as a defendant in this case. Instead, he brings his claims against the "City of Portland Police Department." As the court discussed in footnote 1, supra, the court construes Reitz's claim as against the Portland Police Bureau, or PPB. However, judges in this district have repeatedly held that "[t]he Portland Police Bureau is not a separate entity from the City of Portland and is not amenable to suit. It is merely the vehicle through which the city

fulfills its police functions." *Nickerson v. Portland Police Bureau*, Civil. No. 08-217-HU, 2008 WL 4449874, at *3 (D. Or. Sept. 30, 2008); *see also Nwerem v. City of Portland/Portland Police Bureau*, CV-06-1054-MO, 2006 WL 3228775, at *2 n.1 (D. Or. Nov. 6, 2006) (dismissing PPB as a defendant), *Haliburton v. City of Albany Police Dep't*, No. CV-04-6062-KI, 2005 WL 2655416, at *2-*3 (D. Or. Oct. 18, 2005) (dismissing claims against the Albany Police Department because plaintiff made no showing that it was a separate legal entity). Reitz has presented no evidence the PPB is a legal entity which can be held liable apart from the City of Portland for his alleged injury. Therefore, the court should dismiss with prejudice PPB as a defendant to this case.

          2. Former Mayor Sam Adams

          Adams claims Reitz's claims should be dismissed because he was improperly served and because Reitz fails to state a claim upon which relief may be granted. Although the court is skeptical Adams was properly served, the court need not consider the adequacy of Adams's service because Reitz's claims against Adams should be dismissed for failure to state a claim.

          Apart from the caption and prayer for Relief, Reitz does not reference Adams or make a single allegation against him. The closest Reitz comes to stating a claim against Adams is his prayer for relief where he alleges "[b]oth the State Governor and Mayor and Police Dept [sic] knew I was being targeted. [A] sting operation should have been done as soon as I crossed the [b]order into Oregon and [k]new I was staying [b]y the [p]ort and [r]escue [m]ission." Even giving Reitz's claims liberal construction, the court finds Reitz's allegations incomprehensible and lacking in legal foundation. Further, because Reitz does not assert any claims against Adams, there are no claims which Reitz could cure through amendment. Therefore, the court should dismiss with prejudice all of Reitz's claims against Adams.

IV.  Reitz's Second Motion for Default

Reitz filed his Second Motion for Default on July 24, 2015.  However, because the court concluded that Reitz's First Amended Complaint fails to state a clam, there are no live claims for which the court may declare a default.  On that basis, the court should deny Reitz's Second Motion for Default as moot.

*Conclusion*

For the aforementioned reasons, the court should: (1) DENY Reitz's First Motion for Default (Dkt. No. 38); (2) DENY Reitz's Motion for Extension of Time (Dkt. No. 56); (3) GRANT Defendants' Motions to Dismiss (Dkt. Nos. 43 and 44) and dismiss Reitz's Second Amended Complaint with prejudice; and (4) DENY as moot Reitz's Second Motion for Default (Dkt. No. 53).

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due March 16, 2015. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 2nd day of March, 2015.

JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS AND RECOMMENDATION - 16                                        [RMD]